**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Kristin Miller and
Marna Wahl,

Plaintiffs,

vs.

Waseca Medical Center-
Mayo Health System and
Dr. Ronald Ganelli,

Defendants,

Court File No. 01-CV-644 DSD/JMM

**STIPULATION TO AMEND COMPLAINT**
AND ORDER

---

It is hereby stipulated by the undersigned on behalf of the parties hereto that the amended complaint in the above-entitled action is amended to reflect the changes contained in the amended complaint attached as Exhibit A. It is further stipulated by the undersigned that the answers heretofore served on Plaintiffs shall be deemed to be an answer to the amended complaint. Any new matters alleged in the second amended complaint shall be deemed to be denied unless admitted or otherwise alleged by Defendants hereafter in a subsequent pleading.

Dated: 5/10/02

NICHOLS KASTER & ANDERSON PLLP

James H. Kaster #53946
Nicholas G. ~~B. May #287106~~
4644 IDS Center
Minneapolis, MN 55402
(612) 338-1919
ATTORNEYS FOR PLAINTIFFS

FILED MAY 1 4 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Dated: 5/16/02

MEAGHER & GEER, PLLP

Mary M.L. O'Brien #177404
4200 Multifoods Tower
33 South Sixth Street
Minneapolis, MN 55402
(612) 338-0661
ATTORNEY FOR DEFENDANT GANELLI

Dated: 4/18/02

FAEGRE & BENSON LLP

Marcy R. Frost #229933
2200 Wells Fargo Center
90 South Sixth Street
Minneapolis, MN 55402-3901
(612) 766-7000
ATTORNEY FOR DEFENDANT WASECA

**ORDER**

**It is so ordered.**

Date: 5/13/02

Hon. John M. Mason
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Kristin Miller and
Marna Wahl,

Plaintiffs,

vs.

Waseca Medical Center-
Mayo Health System and
Dr. Ronald Ganelli,

Defendants,

Court File No. 01-CV-644 DSD/JMM

**AMENDED COMPLAINT**

JURY TRIAL DEMANDED

---

Plaintiffs by their attorneys, Nichols, Kaster & Anderson, brings this action for damages and other legal and equitable relief for defendants' violations of laws prohibiting discrimination in employment and other matters. Plaintiffs state the following as their claims against defendants and each of them:

**<u>JURISDICTION AND VENUE</u>**

1. This court has original jurisdiction to hear this complaint and to adjudicate the claims stated herein under Title 28 U.S.C. §1331 and §1343, this action being brought under Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §2000e <u>et. seq</u>. Plaintiff also asserts claims under the Minnesota Human Rights Act, Minn. Stat. §363.01 <u>et. seq</u>., which jurisdiction is based on the doctrine of supplemental jurisdiction. Finally, Plaintiffs state certain Minnesota common law claims, also based on the doctrine of supplemental jurisdiction.

PLAINTIFF'S
EXHIBIT
A

2. The unlawful practices described herein have been committed in the District of Minnesota, the employment records relevant to these practices are, on information and belief, maintained and administered at the offices of the defendant in the District of Minnesota.

**PARTIES**

3. Kristin Miller is an individual residing at 431 Flowervale Street, Owatonna, Minnesota, 55060, County of Steele, and State of Minnesota.

4. Marna Wahl is an individual residing at 502 E. Second Street, Janesville, Minnesota 56048, County of Waseca, and State of Minnesota.

5. Waseca Medical Center-Mayo Health System is a Minnesota non-profit corporation located at 100 Fifth Avenue N.W., Waseca, MN 56093, County of Waseca, and State of Minnesota.

6. Dr. Ronald Ganelli is an individual residing in the County of Waseca, State of Minnesota.

**FACTUAL ALLEGATIONS**

7. Ms. Miller was employed by Waseca Medical Center Mayo Health System, from February 1999 to January 2001. She worked as an LPN and had an exemplary employment record. At the time of her termination, she was paid at the rate of $11.00 per hour and an additional $2.00 per hour for on call pay.

8. Ms. Wahl was employed by Waseca Medical Center, Mayo Health System, from December 1998 to February 2001. She worked as an LPN and had an exemplary employment record. At the time of her termination, she was paid at the rate of $11.75 per hour and an additional $2.00 per hour for on call pay.

9. Plaintiffs were exceptional performers and enjoyed a positive relationship with other co-employees at Waseca Medical Center and generally enjoyed their work.

10. In the fall of 2000, the Waseca Medical Center hired a new surgeon, Dr. Ronald Ganelli (Ganelli).

11. On information and belief, Ganelli has a troubled employment history.

11. Miller and Wahl, as LPNs and surgical nurses, were asked to work side by side with Ganelli on a regular basis.

12. During the course of the following months Ganelli committed repeated acts of physical and sexual assault and harassment on Plaintiffs and others. For example, during the course of surgery with Ganelli he would frequently scream at Miller and other nurses shouting derogatory comments. Examples include:

a. Repeated references to Plaintiffs in the workplace as "c..ts";

b. Repeated references to Plaintiffs as f...... bitches;

c. Repeated verbal assaults both during and outside of surgery telling Plaintiffs to "just shut up" and "I don't need any smart ass comments from you" and "f...... keep it up";

d. Stating to Miller, "I hope for your sake you are hairy because there is nothing I like more than a big hairy muff right in my face."

e. Dr. Ganelli would also exhibit fits of rage and at one time intentionally threw a bag at Miller during surgery which contained human body parts;

f. On January 11, 2001, Dr. Ganelli approached Plaintiffs while they talking to co-workers. Without uttering a word, Dr.Ganelli took a

stethoscope from a co-worker and while cupping Miller's breast placed it on Miller's breast. Immediately thereafter, Dr. Ganelli placed his stethoscope on Wahl's breast, and while cupping her breast with his hand, he said, "listen to her's yell louder." Following that act, Ganelli while cupping Miller's breast, placed the stethoscope on Miller's breast again saying, "listen to it bark orders." Plaintiffs were shocked and extremely embarrassed by the unwelcome sexual touching and continued harassment by Dr. Ganelli;

g. During gall bladder surgeries Miller had to operate the video camera and it was necessary for her to be right next to Dr.Ganelli. Dr.Ganelli would make a point to rub, and not just brush up against, Miller's breast with his elbow. During one surgery Dr.Ganelli had an erection and rubbed it up against her leg;

h. During a colonoscopy procedure Plaintiffs would have to sit next to Ganelli on a stool. Dr.Ganelli would grab the stool to bring Plaintiffs closer to him. He would grab the stool by reaching between Plaintiffs' legs rather than on the side or back of the stool.

i. Dr. Ganelli referred to Plaintiffs as, "fresh unmarked territory;"

j. Dr.Ganelli would rub Plaintiffs' neck and upper back. Miller stated to him, "don't touch me, stay out of my space." Miller then gestured, making a square around her area, stating, "this is my space and that is your space;"

k. Dr.Ganelli would call Plaintiffs honey and sweetie on a regular basis. Miller told Ganelli, "my name is Kristin and you will address me as that." Dr. Ganelli ignored this request;

l. In the endoscopy room the temperature is always hot and Miller would comment on the temperature. Dr. Ganelli would breath down her neck and say, "I like it hot, don't you like it hot and heavy?" Miller moved away and Dr. Ganelli stated, "don't you like your husband breathing down your neck?"

m. Dr. Ganelli would constantly make sexual innuendos on a consistent and daily basis;

n. At one time Wahl had just started running and her legs were sore at work. Dr.Ganelli asked her why she was walking funny. She said her legs were sore and asked, why? Dr.Ganelli said he thought it was her ass. She asked him what he meant and he responded that he thought she "got it up the ass last night;"

o. Wahl's scrubs were sometimes too big for her. Dr.Ganelli began commenting on how he couldn't believe Wahl wore grandma underwear and how his wife wears nothing but Victoria's Secret and crotchless underwear;

p. When Wahl had to tie Dr.Ganelli's surgical gown he commented to her that, "you can tie me up anyway you want." During a procedure Wahl had to insert something and she stated that she could not push it in because her hands were wet. Ganelli replied, "ooohh, I like it wet;"

q. On one occasion when Wahl was required to summon Dr.Ganelli, she knocked on the door to make sure that he was dressed. When she asked him aloud if he was dressed, he replied that he was not but she could still come in;

r. After reporting Ganelli's behavior to administration on a Friday, the following Tuesday, Dr.Ganelli backed Wahl into a corner and threatened her. He placed his finger up to her nose and stated to her that if she had a problem with him, she is to go to him and not the administration.

13. Plaintiffs at all times rejected these unwelcome sexual advances, contacts and harassment by Ganelli, and immediately reported all of the incidents to her employer promptly after their occurrence. Nevertheless, the harassment persisted, and no remedial action was taken by Waseca Medical Center.

14. On repeated occasions Plaintiffs communicated their complaints to the human resources department at Waseca Medical Center regarding the hostile work environment and Dr.Ganelli's unwelcome conduct. Instead of remedying the situation, the human resources representative stated to Plaintiffs that it is acceptable for a doctor to treat a nurse in this fashion because sometimes "we deserve it." The same representative also blamed Plaintiffs, stating "obviously this didn't concern you too bad because you waited until the next morning to report it. Forget what happened and just be grateful for your jobs."

15. Plaintiffs were led to believe that they were not the only ones who had made complaints against Dr. Ganelli. The Monday following reporting Ganelli the previous Friday, Dr.Ganelli approached Miller and was rubbing her neck and his fingertips went down the back of

her shirt. Ganelli stated in a sarcastic tone, "did you miss me honey?...oh...I mean Kristin." Miller had just complained about Dr.Ganelli calling her honey, sweetie, and touching her. She immediately reported the incident and was told that when Dr.Ganelli was questioned about the incident he said he didn't realize he was touching her. Miller was told that it was a cultural thing and because Dr.Ganelli is from the south, thus somehow forgiving his conduct.

16. The incidents of sexual harassment caused extreme embarrassment and humiliation to Plaintiffs. These incidents of sexual harassment by Dr. Ganelli directly interfered with Plaintiffs' ability to perform their duties as LPNs at Waseca Medical Center, and to effectively interact with co-workers and management. Dr. Ganelli's sexual harassment towards Plaintiffs was at all times unwelcome.

17. Despite repeated complaints to human resources and other representatives of Waseca Medical Center, and despite the obvious and conspicuous nature of Dr. Ganneli ongoing sexual harassment, Plaintiffs' employer failed to take timely and appropriate action to remedy the situation after repeated notification to them of the ongoing sexual harassment.

18. As a result of ongoing harassment, intimidation, unwelcome and hostile environment, as well as their employer's disregard for the same, Plaintiffs was constructively discharged from Waseca Medical Center on or about January 29, 2001.

19. Plaintiffs each timely filed a charge of discrimination with the Equal Employment Opportunity Commission and requested a Notice of Right to Sue on March 2, 2001. Plaintiffs each received a Notice of Right to Sue on March 8, 2001. Plaintiffs each received an Amended Notice of Right to Sue on March 18, 2002.

## COUNT I

## SEX DISCRIMINATION IN VIOLATION OF TITLE VII

20. By reference hereto, Plaintiffs incorporate paragraphs 1 through 19 of their Amended Complaint.

21. Plaintiffs and Defendant Waseca are employee and employer respectively for the purpose of the definition set forth in 42 U.S.C. §2000e et. seq. 42 U.S.C. §2000e-2 provides that it is unlawful for an employer "because of sex to discriminate against any individual with respect to compensation, terms, conditions, facilities or privileges of employment." The conduct described herein constitutes sex discrimination in violation of 42 U.S.C. §2000e et. seq.

22. As a direct and proximate result of Defendant's sex discrimination, Plaintiffs have lost past, present, and future income, mental anguish, emotional distress, humiliation, embarrassment, loss of reputation, and other pain and suffering in an amount of excess of $75,000.

23. The discrimination described herein was deliberate and intentional and committed with malice, reckless disregard, or deliberate disregard for the rights of the Plaintiffs. As a result thereof Plaintiffs are entitled to their costs, disbursements and attorneys fees herein.

## COUNT II

## SEX DISCRIMINATION IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT

24. By reference hereto, Plaintiffs hereby incorporate paragraphs 1 through 23 of their Amended Complaint.

25. Plaintiffs and Defendant Waseca are employee and employer respectively for the purposes of the definition set forth in Minn. Stat.§363.01.

26. Minn. Stat. §363.03 provides that it is unlawful for an employer "because of sex...to discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities or privileges of employment."

27. Chapter §363.01, et seq. defines sexual harassment as a form of sex discrimination.

28. Defendant Waseca's conduct described herein, constitutes sex discrimination in violation of Minn. Stat. §363.03 et seq.

29. As a direct and proximate result of Defendant Waseca's sex discrimination, Plaintiffs have lost past, present, and future income, mental anguish, emotional distress, humiliation, embarrassment, loss of reputation, and other pain and suffering in an amount of excess of $75,000.

30. The discrimination described herein was deliberate and intentional and committed with malice, reckless disregard, or deliberate disregard for the rights of the Plaintiffs. As a result thereof Plaintiffs are entitled to their costs, disbursements and attorneys fees herein.

**COUNT III**

**NEGLIGENCE**

31. By reference hereto, Plaintiffs hereby incorporate paragraphs 1 through 30 of their Amended Complaint.

32. Defendant Waseca Medical Center has a duty to Plaintiffs to use reasonable care in the hiring, retention, training and supervision of it's employees, including it's physician employees, to ensure the safety and reasonable care of the remaining employees. This is especially true when the employer knows or should know that certain employees should not have direct and unsupervised contact with, or control of, female employees.

33. Defendant Wascca Medical Center breached this duty of care to the Plaintiffs.

34. This breach of duty caused Plaintiffs to suffer physical injury, fright, disgrace, degradation, loss of income and emotional distress. The damages are in excess of $75,000.

**COUNT IV**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

35. By reference hereto, Plaintiffs hereby incorporates paragraphs 1 through 34 of their Amended Complaint.

36. Plaintiffs suffered a direct invasion of their rights and physical injury as a result of the conduct specified herein.

37. This conduct caused Plaintiffs to suffer physical injury, fright, humiliation, loss of income, and emotional distress. These damages are in excess of $75,000.

**COUNT V**

**ASSAULT AND BATTERY**

38. By reference hereto, Plaintiffs hereby incorporate paragraphs 1 through 37 of their Amended Complaint.

39. While employed by Defendant Wascca, Plaintiffs were subject to harmful, offensive, and unwelcome contact by Dr. Ganelli. This conduct put Plaintiffs in apprehension of further offensive physical contact.

40. Defendant Waseca is liable for the conduct of Dr. Ganelli under the doctrine of respondeat superior.

41. As a result thereof, Plaintiffs have suffered and continue to suffer physical injury, loss of income, fright, humiliation, disgrace, degradation, and emotional distress, all in excess of $75,000.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1.) For compensatory damages including emotional distress, humiliation, degradation, embarrassment, fright, and loss of enjoyment of life, and related injury in excess of the sum of $75,000;

2.) For loss of income, including back pay, front pay, and all damages permitted under Title VII of the Civil Rights Act of 1991, 42 U.S.C. §2000e, et seq., and Minn. Stat. §363.01 et seq;

3.) For treble damages as provide by the Minnesota Human Rights Act;

4.) For costs, disbursements, an attorney's fees;

5.) For such other and further relief and the court deems just and equitable.

Dated: ____________________

NICHOLS KASTER & ANDERSON, PLLP

By ______________________________
James H. Kaster #53946
Nicholas G.B. May #287106
4644 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
(612) 338-1919

ATTORNEYS FOR PLAINTIFF