UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

KRISTIN MILLER and
MARNA WAHL,

Plaintiffs,

v.

WASECA MEDICAL CENTER -
MAYO HEALTH SYSTEM and
DR. RONALD GANELLI,

Defendants.

CIVIL NO. 01-644 (DSD/JMM)

ORDER

The above matter came on for hearing before the undersigned on March 12, 2002 upon Plaintiffs' Motion to Amend The Complaint [Docket No. 12]. James Kaster, Esq. appeared on behalf of Plaintiffs; Mary E. Stumo, Esq. appeared on behalf of Defendant Waseca Medical Center-Mayo Health System ("Waseca"); and Mary M. O'Brien, Esq. appeared on behalf of Defendant Dr. Ronald Ganelli ("Ganelli").

The Court, being duly advised in the premises, upon all of the files, records and proceedings herein, now makes and enters the following Order.

IT IS HEREBY ORDERED that Plaintiffs' Motion for Leave to Amend The Complaint [Docket No. 12] is granted as to Dr. Ronald Ganelli and denied as to Waseca Medical Center - Mayo Health System. Plaintiffs shall promptly cause the Amended Complaint to be served upon Dr. Ronald Ganelli and filed with the Clerk of Court. Defendant Dr. Ronald Ganelli may rely on the denials in his Answer now on file, or may serve an Amended Answer to the Amended Complaint.

Dated: May 22, 2002

JOHN M. MASON
United States Magistrate Judge

FILED MAY 22 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

# MEMORANDUM

Plaintiffs commenced separate but virtually identical actions that have now been consolidated. See Miller v. Waseca Medical Center, 205 F.R.D. 537, 539-40 (D. Minn. 2002). Their Complaints contain the following counts: Counts I and II - Sex Discrimination in Violation of federal and state law; Count III - Common Law Negligence; Count IV - Negligent Infliction of Emotional Distress; and Count V - Common Law Assault and Battery.

Now before the Court is Plaintiffs' Motion to Amend the Complaint to seek punitive damages against each of the Defendants under state law, with respect to Counts III, IV and V. [Docket No. 12].

## I. PROCESS AND STANDARDS FOR AN AWARD OF PUNITIVE DAMAGES UNDER MINNESOTA LAW.

A party seeking to recover punitive damages under Minnesota law must comply with procedural and substantive requirements which are specified by Minnesota Statutes. The process to be followed in seeking punitive damages is set forth in Minn. Stat. § 549.191. That section provides:

> Upon commencement of a civil action, the complaint must not seek punitive damages. After filing the suit a party may make a motion to amend the pleadings to claim punitive damages. The motion must allege the applicable legal basis under section 549.20 or other law for awarding punitive damages in the action and must be accompanied by one or more affidavits showing the factual basis for the claim. At the hearing on the motion, if the court finds prima facie evidence in support of the motion, the court shall grant the moving party permission to amend the pleadings to claim punitive damages.

Minn. Stat. § 549.191.

The substantive requirements for the recovery of punitive damages are specified in Minn. Stat. § 549.20, which provides: "Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20, subd. 1(a). Section 549.20 defines the acts which constitute deliberate disregard for the rights or safety of others:

> (b) A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
> (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
> (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minn. Stat. § 549.20, subd. 1(b).

The principles governing the application of these statutory provisions have been comprehensively summarized in the recent opinion in Olson v. Snap Products, Inc., 29 F. Supp.2d 1027 (D. Minn. 1998), so we see no additional value in repeating them here.

Defendants have submitted Affidavits in opposition to the Motion, but our review of the record is limited. Northwest Airlines, Inc. v. American Airlines, Inc., 870 F. Supp. 1499, 1502-03 (D. Minn. 1994) ("To determine if plaintiff has made the proper showing, the evidence in support of the motion should be throughly examined, without considering evidence submitted in opposition."); Ulrich v. City of Crosby, 848 F. Supp. 861, 867 (D. Minn. 1994) (in evaluating a prima facie showing, "the Court makes no credibility rulings, nor does the Court consider any challenge, by cross examination or otherwise, to the Plaintiff's proof"); Swandlund v. Shimano Indus., 459 N.W.2d 151, 154 (Minn. Ct. App.

1990) (stressing that the process of determining whether a plaintiff has made a prima facie showing "does not require the trial court to make credibility determinations of any kind, and thus does not denigrate the role of the jury"). At the same time, we are mindful of the Court's conclusion in Olson that it should not ignore evidence of Plaintiff's own testimony, even if not offered by Plaintiff, since "the Minnesota Supreme Court commands the Courts, which consider such a Motion, to 'do more than 'rubber stamp' the allegations in the motion papers,' for they 'must ascertain whether there exists prima facie evidence that the defendants acted with wilful indifference.'" Olson, 29 F. Supp.2d at 1033, n. 1 (citing Shetka v. Kueppers, Kueppers, Von Feldt and Salem, 454 N.W.2d 916, 918 n.1 (Minn. 1990)); see also American Airlines, Inc. v. KLM Royal Dutch Airlines, Inc., 114 F.3d 108, 111 (8th. Cir.1997) (a party may not avoid summary judgment by submitting an affidavit that contradicts the party's deposition testimony).

## II. MERITS OF PLAINTIFFS' MOTION

Plaintiffs seek to amend the Complaint to seek punitive damages against each of the Defendants. Their Memorandum sets forth the facts at some length, but it does not comprehensively address the relationship of those facts to the relevant legal considerations. Their legal argument is found at pages 13 to 16 of their Memorandum. Since the factual and legal considerations as to each Defendant are different, we consider them separately.

### A. The Claim Against Dr. Ronald Ganelli

#### 1. Based on Punitive Damages for Assault and Battery (Count V).

Plaintiffs first address the claim for punitive damages against Dr. Ganelli based on the allegations in Count V (assault and battery). Plaintiffs' argument is as

follows:

> Unwelcome sexual contact, or sexual battery, is sufficient prima facie evidence to support an amendment adding a punitive damage claim. Such conduct not only supports an amendment, but also is sufficient to justify an actual award of punitive damages at trial. See Wirig v. Kinney Shoe, 448 N.W.2d 526 (Minn. Ct. App. 1989), rev'd in part 461 N.W.2d 374 (Minn. 1990).

(Plaintiffs' Memorandum at 13)

Defendants correctly observe that Wirig does not stand for the broad proposition that "unwelcome sexual contact, or sexual battery, is sufficient prima facie evidence to support an amendment adding a punitive damage claim" as contended by Plaintiffs. First of all, the punitive damages initially awarded in that case were awarded under the Minnesota Human Rights Act. In any event, the award of punitive damages was reversed after the Supreme Court first observed:

> In this case Wirig, by obtaining attorney fees of $62,800 in the sexual harassment action, has elected to recover damages under the sexual harassment action. Consequently, she cannot recover further punitive damages for battery unless she can show, by clear and convincing proof, that the misconduct on which the $100,000 punitive damages award in the battery action was based is different in kind from the misconduct for which the $6,000 punitive damages was awarded for sexual harassment.

Wirig, 461 N.W.2d at 379. It then concluded "that Wirig is limited to her compensatory and punitive damages awarded in the sexual harassment action, which permits her also to recover her attorney fees from the defendant. Wirig cannot recover any damages on the battery count." Id.

We are persuaded, nonetheless, that Plaintiffs have met their burden, and should be allowed to amend their Complaint to seek punitive damages against Defendant

Dr. Ronald Ganelli. The assault and battery Plaintiffs complain of include Dr. Ganelli rubbing Plaintiffs' necks and backs in a sexually suggestive manner and other similar conduct, touching Plaintiffs' breasts, and throwing things at Plaintiffs. In light of the surrounding circumstances and allegedly repeated nature of the conduct, a jury could find that Plaintiffs have made a prima facie showing of clear and convincing evidence that Dr. Ganelli acted with a deliberate disregard for the rights or safety of Plaintiffs.

There is a dispute among the parties as to the conduct of Dr. Ganelli with respect to the extent of the touching of the breasts of each of the Plaintiffs. The accounts of the Parties and the witnesses are not consistent, and appear to be contradictory, but it will be up to the jury to decide what in fact happened. To the extent that Plaintiffs offer versions which are not consistent, there is a possibility that the determination will not be in their favor. See, e.g., Reiland v. Lind, 1997 WL 729186, at *4 (Minn. Ct. App. Nov. 25, 1998) (discrepancies between plaintiff's affidavit and deposition testimony cast doubt as to the severity and intent of defendant's conduct).

Plaintiffs also made a prima facie showing that Dr. Ganelli threw medical devices and instruments at them. Dr. Ganelli denies throwing things and urges the Court to disregard his conduct claiming that doctors often get frustrated and Plaintiffs as operating room nurses should expect to see frustrated doctors and get blood and body parts on their clothes. It is also true, as to these incidents, that Plaintiffs' testimony is not entirely consistent as to whether the objects were thrown "at" anyone, and if so, whether they were thrown at one or the other of the Plaintiffs - or both of them. As with other factual questions raised in this case, the jury will ultimately make the determination. We are satisfied that there is sufficient evidence from which the jury could reach the conclusion

urged by Plaintiffs.

Plaintiffs testified that Dr. Ganelli rubbed their necks without consent and he grabbed stools by reaching between Plaintiffs' legs to pull them closer to him. Plaintiff Miller also testified to another sexual contact, which Dr. Ganelli argues would have been impossible for him to have done because of his physical condition. On a motion to amend, however, "the Court makes no credibility rulings, nor does the Court consider any challenge, by cross examination or otherwise to Plaintiff's proof." Olson, 29 F. Supp.2d at 1034. Whether Dr. Ganelli was physically able to commit the acts complained of is a question for a jury. At this stage, we are satisfied that Plaintiffs have made a sufficient showing that the acts complained of were committed.

The record also shows that Waseca verbally and in writing warned Dr. Ganelli that inappropriate language, jokes, sexual references and comments regarding how women may look or dress or any uninvited physical contact were unacceptable. For example, Waseca executives told Dr. Ganelli during a meeting that a letter regarding a material breach of his employment contract based upon his unprofessional conduct would be placed in his file. The executives then attempted to give Dr. Ganelli the letter. But according to Plaintiffs' exhibits, Dr. Ganelli became visibly upset and declined to open or accept the letter. Instead, he left the letter lying on a table in front of him and walked out of the room.

We acknowledge that the evidence is sharply disputed on a number of key issues. We do not mean to suggest that the trial court will be bound to submit the issue of punitive damages to the jury if the evidence received at trial does not warrant it. Our task at this point is to insure that there is sufficient evidence to warrant the assertion in the

Complaint, and we conclude that it is.

**2. Claims against Dr. Ganelli based on Negligence (Count III), and Negligent Infliction of Emotional Distress (Count IV).**

We did not find in Plaintiffs' Memorandum any separate argument in support of punitive damages concerning Count III (Negligence). As to Count IV (Negligent Infliction of Emotional Distress), Plaintiffs state:

> "A Plaintiff can recover for negligent infliction of emotional distress when he demonstrates a 'direct invasion of [her] rights' that results from an intentional tort such as defamation or other willful, wanton or malicious conduct. Oslin v. State, 543 N.W.2d 408, 416 (Minn. Ct. App. 1996). Here, Plaintiffs have alleged an intentional tort against Ganelli: assault and battery."

(Plaintiffs' Memorandum at 13 - 14).

It is well-settled that for purposes of punitive damages, plaintiffs must demonstrate that a defendant's acts show deliberate indifference to the rights or safety of others. Deliberate indifference does not imply a purpose of actually intending to harass or otherwise injure a plaintiff, but rather knowing, intentional disregard for the rights or safety of others. A mere showing of negligence is insufficient for recovery of punitive damages. See, e.g., Cobb v. Midwest Recovery Bureau Co., 295 N.W.2d 232, 237 (Minn.1980); Admiral Merchants Motor Freight, Inc. v. O'Connor & Hannan, 494 N.W.2d 261 (Minn. 1992); Johns v. Harborage I, Ltd., 585 N.W.2d 853 (Minn. Ct. App. 1998). Thus, Plaintiffs' Motion is denied as to Counts III and IV against Dr. Ganelli.

**B. The Claims Against Waseca Medical Center.**

Having concluded that punitive damages may not be recovered under the negligence claims, we consider only whether the Plaintiffs have sustained their burden of establishing an ability to seek punitive damages against Waseca Medical Center as to the

allegations in Count V of the Complaint alleging assault and battery. These allegations in Count V of the proposed Amended Complaint are identical to the allegations in the initial Complaint, and they read as follows:

COUNT V
ASSAULT AND BATTERY

> 36. By reference hereto, Plaintiffs hereby incorporate paragraphs 1 through 35 of their Amended Complaint.
>
> 37. While employed by Defendant Waseca, Plaintiffs were subject to harmful, offensive, and unwelcome contact by Dr. Ganelli. This conduct put Plaintiffs in apprehension of further offensive physical contact.
>
> 38. Defendant Waseca is liable for the conduct of Dr. Ganelli under the doctrine of respondeat superior.
>
> 39. As a result thereof, Plaintiffs have suffered and continue to suffer physical injury, loss of income, fright, humiliation, disgrace, degradation, and emotional distress, all in excess of $75,000.

These allegations do not warrant an award of punitive damages. Seeking an award of punitive damages on the theory of respondeat superior is much like seeking such an award on the basis of negligence (Oslin v. State, 543 N.W.2d 408 at 414 (Minn. Ct. App. 1996)), and for the same reasons it is not permitted.

There are additional reasons why we must deny Plaintiffs' Motion to Amend to seek punitive damages against Waseca Medical Center. The Minnesota Statute under which Plaintiffs seek punitive damages specifies that the Court is to consider four factors in determining whether such damages may be recovered from a principal by reason of the acts of an agent. Under Minnesota law:

> Punitive damages can properly be awarded against a master or principal because of an act done by an agent only if:
>
> (a) the principal authorized the doing and the manner of the act, or
> (b) the agent was unfit and the principal deliberately disregarded a high probability that the agent was unfit, or
> (c) the agent was employed in a managerial capacity with authority to establish policy and make planning level decisions for the principal and was acting in the scope of that employment, or
> (d) the principal or a managerial agent of the principal, described in clause (c), ratified or approved the act while knowing of its character and probable consequences.

Minn. Stat. § 549.20, subd. 2.

Plaintiffs' Motion recited this section of the statute, but it failed to identify any subdivision which would be applicable to the facts of this case. We are thus left to speculate as to the grounds upon which Plaintiffs would urge that the facts fall into any of the categories specified in the statute. The only conceivable subdivision which could be urged by the Plaintiffs would be subdivision (b). Plaintiffs argue that the steps Waseca took to prevent the conduct were insufficient. But punitive damages were reversed in Johns, even where the district court had found that the employer knew of its employee's "longstanding pattern of harassment but did not take proper remedial action." Punitive damages were not warranted under these circumstances, because: "This is the language of negligence, and punitive damages are not recoverable where the wrongful conduct is merely negligent." Johns, 585 N.W. 2d at 862.

Since we conclude that Plaintiffs are not entitled to seek punitive damages against Waseca under the Minnesota punitive damages statute, we need not address

Waseca's argument that such claims are preempted by the Minnesota Workers' Compensation Act. For similar reasons, we need not consider Waseca's argument that Plaintiffs' negligence claims are preempted by the Minnesota Human Rights Act.

J.M.M.