UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kristin Miller and Marna Wahl, | Civil No. 01-644 (DSD/SRN) |
| Plaintiffs, | |
| v. | ORDER |
| Waseca Medical Center-Mayo Health System and Dr. Ronald Ganelli, | |
| Defendants. | |

James Kaster, Esq., on behalf of Plaintiffs

Mary Stumo, Esq., on behalf of Defendant

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on Plaintiff's Motion for Attorneys Fees and Costs (Doc. No. 131). This motion has been referred to the undersigned by way of the parties' settlement agreement.

I.     BACKGROUND

On or about April 13, 2001, Plaintiffs brought claims for sexual harassment, assault and battery, constructive discharge, negligent infliction of emotional distress, and negligence against the Waseca Medical Center (WMC) and Dr. Ganelli. On February 21, 2002, this Court consolidated Plaintiffs' cases. On September 18, 2002, after approximately a year and a half of discovery and motion practice, the parties settled this matter during a settlement conference with

1

the undersigned. The parties executed a Confidential Settlement Agreement agreeing to a full settlement of all issues and claims. The parties agreed that WMC would make "a lump sum payment for reasonable attorneys' fees and costs in an amount to be determined by the Court (Judge Nelson),[1] but not to exceed a total of $200,000. . . . WMC and Plaintiffs agree that the Court's determination regarding fees and costs will not be appealable."

By their motion, Plaintiffs request an award totaling $199,359.07–attorneys fees in the amount of $152,532.50 and costs in the amount of $46,826.57.

## II.   DISCUSSION

This Court's decision as to what "reasonable attorneys' fees and costs" are for purposes of the settlement agreement will be guided by the principles in Hensley v. Eckerhart, 461 U.S. 424 (1983) and its progeny. "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." Fish v. St. Cloud State Univ., 295 F.3d 849, 851 (8th Cir. 2002) (citing Hensley, 461 U.S. at 433). Arriving at the lodestar requires a court to exclude from the calculation those hours that were not "reasonably expended." Hensley, 461 U.S. at 434; accord e.g., Baufield v. Safelite Auto Glass, 831 F.Supp. 713, 720 (D. Minn. 1993). For instance, those hours that are excessive, redundant, based upon inadequate documentation, or otherwise unnecessary are excluded. Hensley, 461 U.S. at 434; Jenkins by Jenkins v. State of Missouri, 127 F.3d 709, 718 (8th Cir. 1997) (noting that "the necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested; and the efficiency with which the plaintiff's

---

[1] The parenthetical "(Judge Nelson)" was handwritten and initialed by the parties.

attorneys conducted that activity" must be examined); Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) (providing additional factors); see also Griffin v. Jim Jamison, Inc., 188 F.3d 996, 997 (8th Cir. 1999) (noting that it is not "necessary for district courts to examine exhaustively and explicitly, in every case, all of the factors that are relevant to the amount of a fee award"). After the lodestar figure is determined, the fee award may be adjusted further depending on other considerations, most importantly, the relationship between the fee and the degree of success obtained. Hensley, 461 U.S. at 434.

A fee determination of this sort does not lend itself to the application of bright-line rules, precise formulas, or a grudging examination of legal stratagem. See id. at 436-37 ("There is no precise rule or formula for making these determinations."); Wal-Mart Stores, Inc. v. Barton, 223 F.3d 770, 773 (8th Cir. 2000) (same); Wagenmann v. Adams, 829 F.2d 196 (1st Cir. 1987) ("[W]e must hesitate to nitpick what are essentially factual matters . . . ."); Storlie v. Rainbow Foods Group, Inc., Civ. No. 00-1817, 2002 WL 47000, at *1 (D. Minn. Jan. 9, 2002) ("The standard and criteria to be applied in judging a fee petition under these statutes are familiar to the Court and to counsel but are easier in their recitation than in their application."). Rather, a "court necessarily has discretion in making this equitable judgment." Hensley, 461 U.S. at 437; accord e.g., Griffin, 188 F.3d at 997 ("We give great deference to the district courts on fee matters having to do with services performed before them.").

Defendant makes six arguments about why the hours claimed by Plaintiffs' attorneys are not reasonable and two arguments about why the amount of costs requested should be reduced. Defendant also argues that fees should be reduced to reflect limited success. Each of these arguments will be addressed in turn. Importantly, Defendant is not contesting the hourly rates

charged by Plaintiffs' attorneys.

At the hearing on this matter, Plaintiffs explained that they are not seeking any fees or costs, in accordance with the settlement agreement, from Dr. Ganelli.

### A.     Time Spent on Plaintiffs' Motion to Consolidate

Defendant argues that Plaintiffs' cases should have been brought together as an initial matter. Defendant submits that the cases were brought separately so Plaintiffs' counsel could "Judge shop" and move to consolidate after each case had been assigned to a separate Judge and Magistrate Judge. Defendant requests that $3,300 in fees be excluded for time spent on the motion to consolidate.

Although Ms. Miller and Ms. Wahl's cases were from the outset very similar, this Court would be entering murky territory if it were to hypothesize on the motivations of Plaintiffs' counsel in not consolidating the cases as an initial matter. The Federal Rules of Civil Procedure do not *require* that factually similar cases be joined as an initial matter. See generally FED. R. CIV. P. 20(a) ("All persons *may* join in one action . . . .") (emphasis added). Moreover, the parties may have requested counsel to arrange the cases as such for some personal reasons or counsel could have had a broader trial strategy; for instance, in a consolidated trial negative evidence concerning one plaintiff could influence the jury to the other plaintiff's detriment. Finally, the ultimate consolidation of the cases likely *saved* fees. In any event, whether Plaintiffs' actions were unreasonable is entirely speculative, and, accordingly, this Court cannot say that the time spent on the motion to consolidate was unreasonable.

### B. Time Spent Contesting Defendant's Request for Additional Time to Depose Plaintiffs

Defendant argues that Plaintiffs unreasonably opposed Defendant's request for additional time to depose Plaintiffs. Defendant states that it was forced to bring a motion before the late Magistrate Judge Mason for additional time. Defendant notes that Magistrate Judge Mason granted its motion and acknowledged that Plaintiffs' counsel had made remarks that "distract[ed]" from the deposition. Defendant argues that Plaintiffs' opposition to its motion for additional time was unreasonable, and the fees and costs associated with such opposition, a portion of $21,500, should be reduced.

The Court acknowledges that there were troubles with certain depositions. Defendant, however, is asking this Court to, in effect, declare that Plaintiffs' legal position regarding the motion for additional deposition time was so unreasonable that Plaintiffs cannot include the work for such motion in their fee calculation. Such a ruling would be tantamount to applying Federal Rule of Civil Procedure 11 sanctions. The Court will not do this.

Defendant asserts that Plaintiffs acted unreasonably by interrupting depositions and not agreeing to additional time. Plaintiffs assert that Defendant acted unreasonably by wasting time and asking a number of irrelevant questions. Plaintiffs continued to hold such position throughout Defendant's motion for additional time because they believed that Defendant was abusing its deposition time. Plaintiffs ultimately lost this motion. This, however, means only that Magistrate Judge Mason thought that Defendant's position carried more merit, not that Plaintiffs' position was unreasonable. Given this Court's familiarity with this case, it notes that both parties were aggressively and well represented and that certain proceedings were quite

contentious; accordingly, the labor required from both sides was increased. This, of course, is a permissible litigation strategy. Plaintiffs are entitled, as much as Defendant, to hold firm to a position or attempt to build a record of perceived abuses. In the end, this Court cannot say that Plaintiffs' resistance to Defendant's request for additional deposition time was unreasonable such that the time spent should not be included in the fee.

### C. Time Spent on Motions to Compel Access to Defendant's Computers

Defendant argues that Plaintiffs failed to meet and confer pursuant to Federal Rule of Civil Procedure 37 prior to bringing a motion to compel access to Defendant's computers' hard drives. Therefore, Defendant argues that such motion was unnecessary and costs of nearly $20,000 associated with the motion should be reduced. In addition, Defendant submits that, prior to Plaintiff's motion, it spent nearly $10,000 utilizing KrollOntrack to produce recoverable documents.

At the hearing on this matter, Plaintiffs submit that they did meet and confer.

Meet and confer discussions, although sometimes fruitless, can narrow the issues, especially on discovery matters. Whether Plaintiffs adequately met and conferred, is one of the difficult "judgment calls" associated with a fee petition. Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992) ("[B]ecause determination of the extent of a reasonable fee necessarily involves a series of judgment calls, an appellate court is far more likely to defer to the trial court in reviewing fee computations than in many other situations."). The plain language and spirit of Rule 37 requires a meaningful effort at meeting and conferring. With its petition, Plaintiffs have offered little evidence that they adequately met and conferred regarding access to Defendant's computers. Nonetheless, this Court is not satisfied that any additional discussions would have

6

entirely resolved the need for a motion to compel. Therefore, given the speculative consequence of this alleged failure to meet and confer, this Court declines to reduce the fee award.

### D.     Plaintiffs' Refusal of a Stay of Discovery

Defendant requested a stay of discovery on August 8, 2002 until the settlement conference on September 18, 2002. Plaintiffs opposed such a stay because they did not see any indication that Defendant would make a suitable offer during negotiations, Plaintiffs wanted to get to trial as quickly as possible if negotiations failed, and discovery was almost complete. The case settled at the September 18, 2002 settlement conference. Defendant argues that the fees and costs generated during the period between August 8, 2002 and September 18, 2002, approximately $8,000, should be excluded from the award because Plaintiffs' refusal to agree to a stay was unreasonable.

Plaintiffs had legitimate goals and reasonable concerns about a stay of discovery. Accordingly, this Court declined to grant a stay. Therefore, the fees and costs incurred during this period will not be excluded.

### E.     Double Attendance at Court Hearings and Conferences

Defendant argues that Plaintiffs' counsel, Jim Kaster and Nick May, often duplicated each others' work, while Defendant "only occasionally had two lawyers attend hearings and court conferences." (Def.'s Mem. in Opposition to Pl.'s Mot. for Att'y Fees and Costs, at 15). Defendant lists the following as duplicative work: both settlement conferences; the deposition of Plaintiff Miller; the motion to consolidate; the deposition of Dr. Ganelli; the motion to compel additional time for Plaintiffs' depositions; the deposition of Cheryl Pratt; and the discovery motions hearing on July 31, 2002. Plaintiffs' counsel, Jim Kaster, explained at the hearing on

this matter that the usual procedure is to have an associate, here Nick May, conduct research, draft motions, and prepare Mr. Kaster prior to hearings, motions, or depositions. On certain hearings, motions, or depositions, Mr. Kaster requests that the associate attend either because of the importance of the matter and/or to answer any questions that may arise. Defendant's counsel agreed at the hearing that this is a common, economical way to handle case management; indeed, Defendant's counsel admits to having more than one attorney attend some hearings and conferences in her memorandum.

As for the specific objections, use of two lawyers at certain hearings and depositions was not unreasonable time spent. For example, the records of the deposition of Plaintiff Miller indicate that Mr. Kaster spent 8.5 hours preparing for, defending, and concluding the deposition. On the same day of Plaintiff Miller's deposition, Mr. May spent 3.5 hours reviewing Defendants' document production, beginning a timeline, and defending Plaintiff Miller's deposition. A similar entry is made for Plaintiff Wahl's deposition. Mr. Kaster stated that Mr. May usually only spelled him during depositions when Mr. Kaster had other obligations, and these records support such a statement. As for the depositions of Dr. Ganelli and Cheryl Pratt, both were very important depositions in the case. Dr. Ganelli was the alleged harasser/assaulter and Cheryl Pratt apparently handled personnel issues for Defendant WMC. Double attendance at such depositions was not unreasonable given the depositions' importance.[2] As for the settlement conferences, it simply is not unreasonable or unusual to have two lawyers attend–one lawyer may be more familiar with the evidence in the case and one lawyer may have a closer

---

[2] The records indicate that Mr. May did not attend the Pratt deposition for as long as Mr. Kaster and/or Mr. May's time is attributable to other tasks during the day.

8

relationship with the client or can more easily communicate with the client. As for the motions to consolidate, compel additional time, and for discovery on July 31, 2002, Defendant argues that it never had more than one lawyer at such or similar motions. The motion to compel additional time was of particular importance to Plaintiffs because they thought Defendant was abusing the deposition time. The discovery motions before this Court on July 31, 2002 were numerous and reasonably required the presence of an additional lawyer who was more familiar with the research and/or the facts of each motion. Unlike Schultz v. Amick, 955 F.Supp. 1087, 1115 (N.D. Iowa 1997), this Court is not left with a firm conviction after considering the whole case that Plaintiffs' counsel unreasonably duplicated each others' time. Moreover, it cannot be that every instance where two lawyers attend a proceeding the time must be excluded. See, e.g., Norman v. Hous. Auth., 836 F.2d 1292, 1302 (11th Cir. 1988) ("There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer."); Schultz, 955 F.Supp. at 1115 ("[S]ome coordination of the activities of two attorneys is necessary . . . .").

### F.     Excessive Copy Costs

Defendant argues that Plaintiffs' counsel's $7,426.30[3] bill for copying costs is excessive. Defendant states that Plaintiffs only produced 510 documents during the litigation. Plaintiffs' counsel's records provide the following documentation regarding photocopy costs: (1) the date; (2) the phrase "Photocopy charges;" and (3) the amount. Plaintiffs offer no response.

---

[3] Defendant submits that the bill for copying costs is $7,425.50. Defendant inadvertently failed to include $.80 in connection with the $1,738.80 charge on 6/1/02.

Defendant has raised a legitimate issue with the documentation of these charges. "[T]he fee applicant bears the burden of establishing entitlement to an award" and documenting the costs included in the request. E.g., Hensley, 461 U.S. at 437. Although this Court is sensitive to the procedure of billing copying charges in law firms and how most of it is computerized at the copying machine, this Court must attempt to make a meaningful review of the costs. Given that the documentation leaves this Court with no idea about what was copied, how much was copied, what the copying rates where, and Plaintiffs' counsel's failure to offer an explanation, the Court will reduce the photocopying charges by twenty percent or $1,485.26.

### G. Travel Expenses

At the hearing on this matter, Plaintiffs' counsel agreed to exclude the expenses on 9/7/02, 10/4/02, and 11/4/02–$89.27, $1,337, and $252.03 respectively–representing Plaintiff Miller's or Plaintiff Miller's husband's travel for a deposition or for the settlement conference.

## III. THE LODESTAR AMOUNT

The amount of hours reasonably expended multiplied by a reasonable rate, plus costs results in the following:

| | |
|---|---|
| Amount Requested as Reasonable Attorneys' Fees: | $152,532.50 |
| Amount Requested as Reasonable Costs: | $46,826.57 |
| Less 20% Reduction of Photocopying charges: | ($1,485.26)[4] |
| Less Travel Expenses on 9/7/02, 10/4/02, and 11/4/02: | ($1,678.30) |
| Total Potential Award: | $196,195.51 |

---

[4] $7,426.30 subtracted by 20% equals a $1,485.26 reduction.

A. **Degree of Success Obtained**

Defendant argues that Plaintiffs had limited success because Plaintiffs ultimately settled for less than what they initially demanded at the settlement conference before Magistrate Judge Boylan.

Defendant's argument that Plaintiffs had limited success fails. First, mindful of the fact that this settlement is confidential, this Court will not characterize the settlement in breach of that agreement. With that in mind, this Court cannot say that the full lodestar amount should be reduced when comparing the degree of success obtained and the principles of Hensley. Second, the settlement agreement was a resolution of *all* claims. Accordingly, Plaintiffs can be said to have prevailed on all claims. Third, it stretches the most basic principles of negotiation to say that Plaintiffs were not successful because they retreated from their initial demand. Negotiations involving everything from baseball card swapping and car buying to lawsuits are replete with initial high or low demands so as to offer room to negotiate to a suitable middle ground. Fourth, this Court, as others have, "recall[s] that '[b]ecause damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief.'" Wal-Mart Stores, Inc. v. Barton, 223 F.3d 770, 773 (8th Cir. 2000). Accordingly, Plaintiffs' attorneys will be awarded the full lodestar amount of $196,195.51.

11

**THEREFORE, IT IS HEREBY ORDERED that:**

1. Plaintiff's Motion for Attorneys Fees and Costs (Doc. No. 131) is **GRANTED** in part. Defendant Waseca Medical Center-Mayo Health System shall pay to Nichols, Kaster & Anderson, PLLP the amount of $196,195.51 as reasonable attorneys' fees and costs within twenty days of the date of this Order.

Dated: February 25, 2003

_____
SUSAN RICHARD NELSON
United States Magistrate Judge

12